JIMMY LANDRUM, BOBBIE JOE LANDRUM *v.* STATE OF INDIANA.

[No. 1-275A35. Filed December 18, 1975.]

*William W. Gooden*, of Vincennes, for appellants.

Theodore L. Sendak, Attorney General, *Lawrence B. O'Connell*, Deputy Attorney General, for appellee.

PER CURIAM—Defendants, Jimmy Landrum and Bobbie Joe Landrum, appeal from their conviction of robbery,[1] contending that the detention of their vehicle was without probable cause or unusual conduct. Bobbie Joe Landrum contends the evidence was insufficient to show his active participation in the robbery.

We affirm.

The facts most favorable to the State are: On February 19, 1973, Martin L. Qualkenbush was hitchhiking on Highway 41 to Vincennes, Indiana. At approximately 1:30 or 2:00 A.M., a car stopped to pick him up. The front seat passenger got out of the car to allow him to sit in the middle. In addition to the driver and the front seat passenger, Qualkenbush noticed a male and a female in the rear seat. As the car began moving, the front seat passenger suddenly placed a sharp object to Qualkenbush's neck and told him he wanted all his money. The passenger then proceeded to rifle Qualkenbush's pockets, removing a cigarette lighter, a billfold, and six cents. He removed Qualkenbush's belt and service-type jacket, then told him to take off his boots. At this time the driver said, "No, we don't need them, he's walking." The car was subsequently stopped, Qualkenbush was released and told to start walking.

---

1. IC 1971, 35-13-4-6, Ind. Ann. Stat. § 10-4101 (Burns 1956).

As soon as Qualkenbush was able to get a ride into Vincennes, he notified the Knox County Police. The police immediately sent out a radio dispatch to the surrounding counties, detailing the description of the car as being a light colored '60 to '62 Ford Galaxie and the occupants as being three white males and one white female. The broadcast then gave a description of the goods taken from the victim, and related that the vehicle was headed north on Highway 41.

Officers Calvin, Pruett and Eaton of the Terre Haute Police Department all related that they had received the above dispatch except they believed the dispatch had stated that the vehicle was red over white. Officer Calvin then related that approximately one-half hour later, his attention was attracted by a '62 Mercury, two-door, red over white, with four occupants, three white males and one white female, proceeding north on Highway 41. He stated because of the similarity between the radio description and his observations, he followed the vehicle and determined that further investigation was appropriate.

When the officer approached the car, he noted the occupants and later learned that Bobbie Joe Landrum was driving and Jimmy Landrum was the front seat passenger. While questioning the occupants, he noticed a pair of boots on the floorboard in the back seat and saw that all the occupants already wore shoes. He also saw that Jimmy Landrum was wearing a service-type jacket. From these observations and the fact that the police communique had reported as taken from the victim, among other things, a "green Army-type coat" and further, the absence of a drivers license and registration, the officer determined there was probable cause to arrest.

We are of the opinion that the momentary detention of defendants-appellants as well as the arrest and search was justified under the rationale of *Luckett* v. *State* (1972), 259 Ind. 174, 284 N.E.2d 738 and *Williams* v. *State* (1974), 261 Ind. 547, 307 N.E.2d 457.

Further inspection of the car at the station revealed a billfold under the front seat passenger's side, containing a driver's license with the name of Martin L. Qualkenbush. A search of Jimmy Landrum revealed a razor.

Premised upon the evidence seized, an affidavit was filed, charging the defendants Bobbie Joe and Jimmy Landrum with robbery. At trial, the jury found both defendants guilty. The court sentenced Jimmy Landrum to ten to twenty-five years. Bobbie Joe Landrum was sentenced to ten to twenty-five years, all suspended except for five years.

 Defendants contend the initial detention of their vehicle was invalid. We believe the initial stop was justified pursuant to an investigatory detention.[2]

In *Luckett* v. *State* (1972), 259 Ind. 174, 284 N.E.2d 738, wherein the defendants were detained when the color of their vehicle and the license number prefix matched the police dispatch, the Supreme Court determined that the facts known to the officer were sufficient to justify an investigatory stop. The Court stated:

> ". . . there is nothing *automatically* unconstitutional in subjecting citizens to a brief detention under circumstances where probable cause for a formal arrest is lacking. . . . The constitutionality of such detention depends solely upon the reasonableness of the action taken by the police officer." (Original emphasis.) 259 Ind. at 179, 180.

The court went on to explain that the objective reasonableness standard had previously been established in *State* v. *Smithers* (1971), 256 Ind. 512, 269 N.E.2d 874 where it was stated:

> " '. . . would the facts available to the officer at the moment of the seizure or the search "warrant a man of reasonable caution in the belief" that the action taken was appropriate? . . .' " 259 Ind. at 180.

---

2. A stop for "unusual conduct" pursuant to IC 1971, 35-3-1-1 (Burns Code Ed.), is not required where the police intrusion is founded upon independent knowledge and circumstances apart from such observations. See *Williams* v. *State* (1974), 261 Ind. 547, 370 N.E.2d 457.

The investigating officer related that a vehicle similar to the one described in the dispatch was observed proceeding north on Highway 41 at an early morning hour. In his estimation, a 1962 Mercury has a similar configuration to a 1962 Ford Galaxie. In addition, three white males and one white female were occupants in the vehicle. Location of the vehicle was within the range of the possible flight from Knox County. The car in flight was travelling north on Highway 41, as indicated by the police communique. It was about 4:30 o'clock A.M. and traffic on Highway 41 was very light.

Lack of or an inaccurate description does not destroy reasonableness of the stop. *Luckett* v. *State, supra; Williams* v. *State, supra.* Since an exact description is not required, *Luckett, supra,* this information compared against the objective standard in *Smithers, supra,* would warrant a man of reasonable caution in the belief that the action taken was appropriate.

Our Supreme Court, in *Williams* v. *State, supra,* stated:

". . . The actions of these police officers was proper and reasonable police action—witnessed by the ripening of their temporary detention into arrest for probable cause when they observed the second suspect and a sawed-off shotgun out of sight in the rear of appellant's automobile." 307 N.E.2d at 469.

We agree with defendants' contention that without the detaining officers' testimony at the motion to suppress the trial court could not have determined a "reasonable" investigative purpose, *Salter* v. *State* (1975), 163 Ind. App. 35, 321 N.E.2d 760. However, the investigating officers testified in the trial of the cause without objection which would amount to a waiver of error, if any, in the trial court's overruling the motion to suppress. The evidence introduced and admitted at trial without objection was proper.

The record clearly established that the officer had received the radio description. From this information, he reasonably

concluded that the defendants and their vehicle corresponded with the description given in the radio dispatch and further investigation was appropriate. Therefore, there is no error in the trial court's determination that the investigative stop was proper.

The second contention is that the evidence was insufficient to show Bobbie Joe Landrum's active participation in the robbery.

Appellants further argue in specifications 2(B) and 3 as supported by one argument that the court erred in refusing to grant defendants' motion under Indiana Rules of Procedure, Trial Rule 50 for a judgment on the evidence at the close of the State's case in chief and, 3, the verdict was contrary to law in that there was no overt action on the part of the defendant Bobby Joe Landrum to aid, abet or assist in the robbery of Qualkenbush.

This court held in the case of *Johnson* v. *State* (1975), 164 Ind. App. 12, 326 N.E.2d 637, 641, in quoting from *State* v. *Overmyer* (1973), 155 Ind. App. 689, 294 N.E.2d 172, which had quoted from *Bash* v. *State* (1970), 254 Ind. 671, 262 N.E.2d 386:

> " ' "A directed verdict is only proper where there is a total absence of evidence on some essential issue required to convict, or where the evidence is without conflict and susceptible to only one inference in favor of the accused. . . ." ' "

and further quoted *Holliday* v. *State* (1970), 254 Ind. 85, 257 N.E.2d 679, in passing on the requirements of a directed verdict:

> " 'To avoid a directed verdict the State merely has to make out a prima facie case.' "

In the case at bar the evidence presented by the State in its case in chief made a prima facie case as shown by the evidence above and the court correctly overruled the motion for directed verdict. It is our further opinion that the evidence was sufficient to prove

the appellant Bobby Joe Landrum guilty beyond a reasonable doubt of the crime charged and that the jury's verdict was not contrary to law.

This court has repeatedly stated that upon review, we will not reweigh the evidence nor determine the credibility of witnesses. Only the evidence most favorable to the State and all reasonable inferences to be drawn therefrom will be considered on appeal. If there is substantial evidence of probative value sufficient to establish every material element of the crime beyond a reasonable doubt, the verdict will not be disturbed. *Rennert* v. *State* (1975), 263 Ind. 274, 329 N.E.2d 595.

In this case, there is agreement that the victim was robbed by Jimmy Landrum, the front seat passenger. Bobbie Joe Landrum was admittedly the driver of the vehicle during the robbery. He watched the entire episode and made a statement only when Jimmy Landrum ordered the victim to remove his boots. Bobbie Joe stated: "*We* don't need his boots, he's walking." Under the above stated rules of evidence and our duty concerning the same we necessarily find this evidence is sufficient to substantiate beyond a reasonable doubt that Bobbie Joe Landrum participated in the robbery.

Having presented no reversible error, the judgment is affirmed.

NOTE.—Reported at 338 N.E.2d 666.